# Pittsburg's Redistricting.

*Constitutional law—Municipalities—Classification of cities—Local legislation—Act of April* 24, 1905, *P. L.* 307.

The Act of April 24, 1905, P. L. 307, relating to the redistricting of cities of the second class into wards is not unconstitutional, nor violative of sec. 7, art. III, of the constitution forbidding local or special legislation regulating the practice or jurisdiction of the courts.

The division provided by the act is of a ministerial, and not of a judicial character, and the power conferred on the president judge of the county in which the city is situated to appoint a commission to divide the city into wards is a proper exercise of legislative authority with which the courts will not interfere.

Argued Oct. 20, 1908. Appeal, No. 75, April T., 1909, by A. G. Craig, from order of C. P. No. 2, Jan. T., 1907, No. 955, dismissing exceptions to report of commissioners in the matter of Redistricting the City of Pittsburg into wards. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Appeal dismissed for want of jurisdiction.

Exceptions to report of commissioners appointed to redistrict the city of Pittsburg into wards. Before FRAZER, P. J.

The only question involved in the case is the constitutionality of the Act of April 24, 1905, P. L. 307.

*Error assigned* was in dismissing exceptions to report of commissioners.

*Chas. A. O'Brien,* of *O'Brien & Ashley,* for appellants.—The act of April 24, 1905, for redistricting cities of the second class is in violation of sec. 7, art. III, of the state constitution: Wheeler v. Philadelphia, 77 Pa. 338; Ayars's Appeal, 122 Pa. 266; Ruan Street, 132 Pa. 257; Wyoming Street, 137 Pa. 494; Chalfant v. Edwards, 173 Pa. 246; Knox Street, 12 Pa. Superior Ct. 534.

The powers conferred upon the president judge were judicial: Mississippi v. Johnson, 71 U. S. 475; Flournoy v. Jeffersonville, 17 Indiana, 169; Cooper's Case, 22 N. Y. 67.

*Lee C. Beatty,* with him *W. B. Rodgers,* for appellees.—The division of a municipality into wards is not a matter of a judicial nature: Com. v. Bell, 4 Pa. Superior Ct. 187; Com. v. Scouton, 20 Pa. Superior Ct. 503.

The act of 1905 does not impose any judicial duties upon the president judge, but provides a commission for redividing wards of second-class cities: Com. ex rel. v. Collier, 213 Pa. 138; Truitt v. Philadelphia, 221 Pa. 331; Philadelphia v. Fox, 64 Pa. 169; State v. Hathaway, 115 Mo. 36 (21 S. W. Repr. 1081); Robey v. Prince George's County, 92 Md. 150 (48 Atl. Repr. 48); Baltimore v. Bonaparte, 93 Md. 156 (48 Atl. Repr. 735); Esmeralda County v. District Court, 18 Nevada, 438 (5 Pac. Repr. 64).

OPINION BY MORRISON, J., December 7, 1908:

The contest in this case arises in proceedings for the division of the recently enlarged city of Pittsburg, a city of the second class, into wards, in pursuance of the act of assembly entitled: "An act authorizing the creation, division and consolidation of wards, in cities of the second class; providing a method therefor and fixing the minimum number of inhabitants in each ward."

Under said act the petition was presented to Hon. R. S. FRAZER, president judge of the court of common pleas No. 2 of Allegheny county, in December, 1906, and he appointed a commission as provided in the act, which commission, on June 25, 1908, filed its report, dividing said city into wards, and the same

being confirmed by the judge nisi, with leave to any interested
party to file exceptions to said report within fifteen days; appel-
lants filed exceptions to the constitutionality of the said act,
alleging that it was local and special legislation regulating the ju-
risdiction and practice of the courts.   These exceptions and
others involving questions of fact, were heard by the judge and
dismissed, he holding, as to the constitutional objections, that
they could not prevail because the authority and duties con-
ferred were not judicial in character, but merely ministerial.
From this order of the president judge we have this appeal.  ·

The learned counsel for appellants state the ·question in-
volved to be (a) "Is the Act of April 24, 1905, P. L. 307,
relating to the redistricting of cities of the second class, uncon-
stitutional, as violative of sec. 7, art. III, of the constitution,
forbidding local or special legislation regulating the practice or
jurisdiction of the courts?"   (b) "Does the act of April 24,
1905, which affects as a classification act only two counties,
Allegheny and Lackawanna, by investing the president judge
of the common pleas with exclusive authority, violate sec. 6,
art. V, of the constitution, which provides that the courts of
common pleas of Allegheny county shall consist of three judges
each?"

The assignments of error relate first· to dismissing appellant's
exceptions to the report of the commission and sustaining said
report; second, that the court erred in holding that the act of
April 24, 1905, was constitutional, and that the jurisdiction
conferred thereby was not judicial but ministerial; and, third,
that the court erred in dismissing all of the exceptions to the
commissioner's report and confirming it finally and in causing
to be transmitted to the mayor of the city of Pittsburg a copy
of the commissioner's report, together with a copy of the judge's
order, to be submitted by the mayor to the councils to prepare
and adopt an ordinance for carrying the report as confirmed
into effect, as provided by the Act of April 24, 1905, P. L. 307.

The view we take of this appeal only requires us to consider
the constitutionality of the said act of 1905 as relating to cities
of the second class and as to the question of whether it attempts
to impose new judicial powers upon the president judges of the

common pleas courts of the counties containing cities of the second class.

The Act of June 25, 1895, P. L. 275, divides the cities of the state into three classes with respect to their population. Sec. 1 thereof provides as follows: "That for the purposes of legislation, regulating their municipal affairs, the exercise of certain corporate powers, and having respect to the number, character, power and duties of certain officers thereof, the cities now in existence and those hereafter created in this commonwealth, shall be divided into three classes; . . . ."

In Com. v. Moir, 199 Pa. 534, the Supreme Court held, as stated in the syllabus: "Classification of cities is a legislative and not a judicial question, and if it is based on difference of municipal affairs, and relates to and deals with such affairs, the questions of where the line shall be drawn and what differences of system shall be prescribed for differences of situation are wholly legislative." That decision had special reference to the act of March 7, 1901, entitled: "An act for the government of cities of the second class."

In Beltz v. Pittsburg, 26 Pa. Superior Ct. 66, we held the Act of June 25, 1895, P. L. 275, dividing the cities of the commonwealth into three classes, with respect to their population, to be constitutional. That case was appealed to the Supreme Court, and on April 24, 1905, the judgment of the Superior Court was affirmed: Beltz v. Pittsburg, 211 Pa. 561. Those decisions expressly recognize the power of the legislature to enact laws applying only to cities of the second class.

In Wyoming Street, Pittsburg, 137 Pa. 494, the division of the cities of this state into three classes, by the Act of May 23, 1874, P. L. 230, was held to be constitutional. Since the subdivision of cities into classes, legislation in respect of such classes has been upheld. See Act of May 23, 1889, P. L. 277, which was upheld in Lackawanna Township, 160 Pa. 494, where it was expressly held not special legislation within the meaning of art. III, sec. 7, of the constitution of 1874 as it is applicable to all cities of the third class. We, therefore, hold that the act of April 24, 1905, is not local or special legislation because it is limited to cities of the second class.

The remaining question is whether the division of a municipality into wards is of a judicial or ministerial character. We are clearly of the opinion that such division of a municipality is not of a judicial nature. The following, among other acts, illustrate the practice in this respect. Under sec. 8, of the Act of March 13, 1844, P. L. 98, the city of Allegheny is divided into four wards, described in the section in question. The Act of March 17, 1869, P. L. 377, divides the township of Covington, county of Luzerne, into two wards, and describes the boundaries of the wards. The Act of September 8, 1873, P. L. (1874), 433, divides a borough into two wards, and describes the boundaries of the same. By Act of March 13, 1844, P. L. 98, the select and common councils of the city of Allegheny were empowered to change the boundaries of the wards and to divide the said city into four or more wards or districts so as to make the number of taxable inhabitants of each ward of said city as nearly equal as may be. Under the Act of March 31, 1870, P. L. 717, it is provided that the councils of the city of Allegheny shall have power from time to time to change the boundaries of wards and to create new wards. Under the Act of April 2, 1872, P. L. 743, the councils of the city of Pittsburg are empowered to provide by ordinance for dividing and arranging the territory of said city into wards, in such manner as not to make more than forty wards in the whole of said city.

The above and other acts that might be referred to indicate, quite strongly, that the division of a municipality into wards is legislative and not judicial.

The learned judge below expressly held that his duties under the act of April 24, 1905, were ministerial and not judicial. In this we think he was right. It is not a new thing for the legislature to impose ministerial duties upon a president judge; see Act of April 10, 1867, P. L. 62, entitled: " An act for the better and more impartial selection of persons to serve as jurors, in each of the counties of this commonwealth." The Act of March 24, 1887, P. L. 14, imposes ministerial duties upon the president judge. We held this act constitutional in Commonwealth v. Bell, 4 Pa. Superior Ct. 187, and Com. v. Scouton, 20 Pa. Superior Ct. 503.

Art. V, sec. 21, of the constitution provides that: "No duties shall be imposed by law upon the Supreme Court or any of the judges thereof, except such as are judicial, nor shall any of the judges thereof exercise any power of appointment except as herein provided." We are not aware of any constitutional provision against the imposition of ministerial duties by the legislature upon individual judges, except the judges of the Supreme Court.

In Commonwealth ex rel. v. Collier, 213 Pa. 138, it is decided that, "The provision in section 21 of article V of the Constitution, that judges shall be exempt from the imposition of non-judicial duties, applies only to judges of the Supreme Court."

We cannot think that the delegation of power under the act of April 24, 1905, would have been doubted if instead of the president judge of the court of common pleas, the power to appoint a commission had been delegated to the governor of the state, the mayor of the city or the president of either branch of councils. We do not think, however, that the powers of the president judge, under the act in question, are any greater than powers which could be conferred by the legislature upon a mayor or any other competent person.

The legislature has for the purpose of providing civil service in cities of the first class (see Act of March 5, 1906, P. L. 83), and for cities of the second class (see Act of May 23, 1907, P. L. 206), created a commission, which commission is appointed by the mayor of the city. The civil service act relating to cities of the first class was upheld in Truitt v. Philadelphia, 221 Pa. 331. It is well settled that the legislature has full power over the municipal subdivisions of the state and can prescribe such method as it chooses to provide for the internal arrangements of a municipal corporation or destroy it: Philadelphia v. Fox, 64 Pa. 169.

We view the act of April 24, 1905, as a mode of exercising the legislative power to subdivide the cities of the second class into wards. The proceedings therein authorized are not judicial, but purely ministerial. "A judicial act is one which determines the existing law in relation to existing facts, and which applies

the law to the subject-matter before the court:" White on Constitution of Penna. 297.

In State v. Hathaway, 115 Mo. 36, it was held: "A judicial duty within the meaning of the constitution is such a duty as legitimately pertains to an officer in the department designated by the constitution as judicial." That case has an interesting opinion by GANTT, J., in which he quotes from the supreme court of the United States in United States v. Ferreira, 54 U. S. 40. In Robey v. Prince George's County, 92 Md. 150, McSHERRY, C. J., discusses the question of judicial and nonjudicial power in an interesting manner. In his opinion he says: "The mere fact that a judge is called on by statute to execute a certain function does not make the function a judicial function. Its character is dependent on its qualities, not on the mere accident as to the person who has been designated to do it. The qualities of the act and not the character of the actor must determine the nature of the act. As said in Ex parte Candee, 48 Ala. 399: 'It by no means follows that a duty is judicial because it is to be performed by a judge; if in its performance he does not exercise the powers that appropriately appertain to his judicial office, it is ministerial, and not judicial, although its performance requires the exercise of his judgment.'"

In Baltimore v. Bonaparte, 93 Md. 156, the same chief justice said: "The function of assessing property for purposes of taxation is essentially not a judicial function, and it cannot be made a judicial function by being imposed upon or committed to the judicial department." The learned judge then holds that an appeal would not lie on a question involving the accuracy of an assessment, although it had been made by the judicial department.

In Esmeralda County v. District Ct., 18 Nev. 438, it is held: "The action of a judicial officer in regard to matters which are exclusively executive or administrative in their nature, even when the act of the legislature requiring such duties to be performed is in violation of the constitutional provision, cannot be reviewed by certiorari."

For a thorough discussion of the question see the United

States v. Ferreira, 54 U. S. 40, where in an interesting opinion by Chief Justice TANEY, we find the following: "The powers conferred by these acts of congress upon the judge as well as the secretary, are, it is true, judicial in their nature. For judgment and discretion must be exercised by both of them. But it is nothing more than the power ordinarily given by law to a commissioner appointed to adjust claims to lands or money under a treaty; or special powers to inquire into or decide any other particular class of controversies in which the public or individuals may be concerned. A power of this description may constitutionally be conferred on a secretary as well as on a commissioner. But it is not judicial in either case, in the sense in which judicial power is granted by the constitution to the courts of the United States." Again, the learned judge says: "It would seem, indeed, in this case, that the district judge acted under the erroneous opinion that he was exercising judicial power strictly speaking under the constitution, and has given to these proceedings as much of the form of proceedings in a court of justice as was practicable." The learned chief justice concludes with an order dismissing the appeal for want of jurisdiction.

In the present case it is contended that the learned president judge below thought he was acting judicially because he had a record made up of the proceedings in the ordinary manner of making such records in court and that he made a decree for the payment of the expenses and costs of the commission. But this does not determine the character of the proceeding. Moreover, the learned president judge expressly held that he was only acting ministerially, and the question of the decree or judgment for the payment of the expenses and costs is not raised by the assignments of error and we decline to give it consideration.

The appeal must be dismissed for want of jurisdiction, and it is so ordered.